# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR RECONSIDERATION EN BANC

## NO. 03-09-00280-CV

### In re Texas State Board of Public Accountancy

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

### D I S S E N T I N G   O P I N I O N

Because the panel opinion in this case fails to follow precedent of the Texas Supreme Court and this Court acknowledging and upholding the use of discovery in the exact circumstances presented here—i.e., a suit for judicial review under the Administrative Procedure Act in which the plaintiff has alleged "procedural irregularities"—I believe that en banc review is warranted. *See* Tex. R. App. Proc. 41.2(c); *Texas Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993) (recognizing that, once administrative remedies have been exhausted, APA permits reviewing court to receive evidence of procedural irregularities not reflected in the administrative record); *City of Stephenville v. Texas Parks & Wildlife Dep't*, 940 S.W.2d 667, 676-77 (Tex. App.—Austin 1996, writ denied) (affirming trial court's judgment reversing and remanding Department's final order based on procedural irregularities and rejecting applicants' fourth point of error based on

pretrial discovery in suit for judicial review under APA). For this reason, I dissent from the denial of en banc consideration.

***Sovereign immunity does not bar discovery from the State.***

The panel reasons that this case hinges upon a question of statutory construction, and that statutes waiving sovereign immunity must be narrowly construed. Because the Administrative Procedure Act is a statute that waives sovereign immunity to allow suits for judicial review of agency orders in contested-case proceedings and there is no statute within subchapter G of the APA that expressly provides for discovery in a suit for judicial review, the panel concludes that discovery is prohibited in a suit for judicial review. But the panel's reasoning and, therefore, its conclusion are flawed.

As a preliminary matter, the question of whether sovereign immunity has been waived is not even an issue in this case. The parties, as well as the panel, agree that section 2001.171 of the APA waives sovereign immunity. *See* Tex. Gov't Code Ann. § 2001.171 (West 2008); *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004); slip op. at 2. Because there is no dispute that sovereign immunity has been waived under the circumstances presented here, the issue of sovereign immunity is not determinative of whether the APA permits discovery in a suit for judicial review.

But even if sovereign immunity were an issue in this case, it would not prohibit discovery in the circumstances presented here—i.e., where the facts are disputed and the plaintiffs raise allegations of procedural irregularity. Texas courts have routinely recognized that, in cases where the facts are disputed, sovereign immunity does not bar discovery under the rules of civil

2

procedure. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221 (Tex. 2004) (trial court required to examine evidence on which parties relied—after conducting discovery—to determine if fact issue existed regarding Department's negligence); *City of Paris v. Floyd*, 150 S.W.3d 224, 227-28 & n.2 (Tex. App.—Texarkana 2004, no pet.) (rejecting City's claim that sovereign immunity barred discovery at early stage of proceedings); *City of Saginaw v. Carter*, 996 S.W.2d 1, 3-4 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (holding that, absent allegation of fraudulent pleadings, sovereign immunity cannot be asserted as grounds for dismissal before parties have opportunity to conduct discovery), *overruled in part on other grounds*, *Miranda*, 133 S.W.3d at 224 n.4; *but cf. Employees Ret. Sys. v. Putnam, LLC*, 294 S.W.3d 309, 323 (Tex. App.—Austin 2009, no pet.) (where facts are undisputed, sovereign immunity is question of law and trial court does not err in denying requested discovery). In *Texas Department of Parks & Wildlife v. Miranda*, the supreme court acknowledged that the State waited "over a year after the Mirandas filed suit and after the parties conducted discovery" before filing its plea to the jurisdiction alleging that sovereign immunity barred the Mirandas suit. 133 S.W.3d at 221-22. Moreover, in *City of Paris v. Floyd* and *City of Saginaw v. Carter*, both the Texarkana and Fort Worth courts of appeals rejected claims that sovereign immunity barred discovery in the early stages of a proceeding in which the facts were disputed and there was no allegation of fraudulent pleading. 150 S.W.3d at 227-28 & n.2; 996 S.W.2d at 3-4. And, even though this Court has held that a trial court does not err in denying discovery based on a claim of sovereign immunity, *see Putnam, LLC*, 294 S.W.3d at 323, it did so because the facts and pleadings were undisputed, *see id.* ("[T]here is no fact issue to be

resolved.")  Thus, additional discovery was not necessary to decide whether sovereign immunity barred Putnam's claim as a matter of law.  *See id.*

In this case, the facts are disputed, and there is no allegation of fraudulent pleadings. Thus, even if the State's sovereign immunity were in dispute, discovery would be proper under *Miranda*, *Floyd* and *Carter*, *supra*.  The panel's failure to recognize as a preliminary matter that sovereign immunity, standing alone, does not bar discovery from the State demonstrates that the panel's reasoning is flawed.

### *The panel misconstrues the APA.*

Based on its reasoning that the APA is a statute that waives sovereign immunity and must be narrowly construed, the panel concludes that the rules of discovery embodied in the rules of civil procedure do not apply in a suit for judicial review filed under the APA.  The panel's conclusion is based on a comparison of the statutory provisions in subchapters D and G of the APA. The panel reasons that subchapter D—specifically section 2001.091—expressly allows for discovery in administrative proceedings pending before an agency, but subchapter G does not contain a similar provision allowing for discovery in a suit for judicial review filed in a district court.  But the panel's superficial analysis of these statutory provisions ignores the significance of section 2001.176 in subchapter G, as well as the historical context in which the APA and its predecessor—the Administrative Procedure and Texas Register Act—were enacted.

Section 2001.176 provides that a petition for judicial review must be filed in a Travis County district court unless provided otherwise by statute.  By requiring a party to file its petition for judicial review in a Travis County district court, we must presume that the legislature understood

that the rules of civil procedure, including the rules of discovery, would be applicable to suits for judicial review unless expressly prohibited by statute. *See* Tex. R Civ. P. 2 (providing that rules of civil procedure shall govern all actions of civil nature in district courts of this state); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001) (citing *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942) ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it.")).

The historical context in which the APA—and its predecessor APTRA—were enacted further supports the presumption that the legislature understood that the rules of civil procedure, including the rules of discovery, would be applicable in a suit for judicial review. The legislature first enacted APTRA in 1975. *See* Administrative Procedure and Texas Register Act of 1975, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136, 136-48. But APTRA did not become effective until January 1, 1976. *See id.* § 23, 1975 Tex. Gen. Laws at 148.

Prior to the enactment of APTRA, however, there were no standardized rules of practice and procedure before administrative agencies in Texas. Among its many purposes, APTRA was enacted "to afford minimum standards of uniform practice and procedure for state agencies." *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990); *see also* Larry J. Craddock, *A History of Texas Administrative Law*, Travis County Bar Ass'n, Nuts & Bolts of Administrative Law Seminar (Feb. 13, 2004). Most of the provisions of APTRA were enacted to correct deficiencies in administrative hearings that existed before APTRA's enactment. *See* Craddock, *A History of Texas Administrative Law*, at 2. As one practitioner commented at the time:

It is extremely important that lawyers, administrative agencies, and more importantly, the courts remember that APTRA is a *reform* statute. It was adopted for the purpose of making substantial changes in the manner that administrative hearings are handled. In large measure APTRA represents a reaction to and an attempt to correct unsatisfactory administrative practices which have arisen since government by administrative agency became important in the 1940's and a reaction to court decisions which have become overly solicitous of loose practices of administrative agencies, often at the expense of basic due process.

James W. Wilson, *The Hearing Stage*, Texas Administrative Law and Procedure, State Bar of Texas, (March 1976).

Unlike state courts, administrative agencies were not subject to the rules of civil procedure. *See State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480, 485 n.7 (Tex. 1993) ("An administrative agency is not a 'court' and its contested case proceedings are not lawsuits, no matter that agency adjudications are sometimes referred to loosely as being 'judicial' in nature.). Moreover, the Texas Supreme Court and this Court have consistently held that administrative agencies are creatures of statute and have no inherent authority. *See, e.g.*, *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001); *Public Util. Comm'n v. GTE-Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex. 1995); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137-38 (Tex. App.—Austin 1986, writ ref'd n.r.e.). Stated differently, an administrative agency "has only those powers expressly conferred upon it by the legislature." *City Pub. Serv. Bd.*, 53 S.W.3d at 316. Thus, in order to standardize the administrative process across all state agencies and provide agencies with the procedural tools necessary to conduct their business, it was incumbent upon the legislature to

6

expressly delegate those procedural powers in what is now subchapter D of the APA, which is exactly what the legislature did when it enacted APTRA in 1975.[1]

For example, the legislature provided that the rules of evidence as applied in nonjury civil cases in the district courts would be applicable to all contested cases. *See* APTRA, § 14(a), 1975 Tex. Gen. Laws at 142 (current version codified at Tex. Gov't Code Ann. § 2001.081 (West 2008)). In contested cases, the legislature provided that evidence that was irrelevant, immaterial, or unduly repetitious shall be excluded and also required agencies to give effect to the rules of privilege recognized by law. *See id.* (current version codified at Tex. Gov't Code Ann. §§ 2001.082, .083 (West 2008)). In addition, the legislature provided authority for administrative agencies to swear witnesses and take their testimony under oath. *See id.* § 14(b), 1975 Tex. Gen. Laws at 142 (current version at Tex. Gov't Code Ann. § 2001.088 (West 2008)). The legislature also provided authority for agencies to receive evidence in writing, for parties to cross-examine witnesses, and for agencies

---

[1] Prior to the enactment of APTRA, there was little consistency in administrative procedure from one agency to another. *See* Larry J. Craddock, *A History of Texas Administrative Law*, at 3, Travis County Bar Ass'n, Nuts & Bolts of Administrative Law Seminar (Feb. 13, 2004). Large agencies regulating major industries such as the oil and gas, insurance, and banking industries had more extensive procedures than most. *Id.* But they would often take notice of evidence in agency files without notice to the parties or an opportunity for rebuttal. *Id.* Smaller agencies like the Texas Liquor Control Board—now the Texas Alcoholic Beverage Commission—would present administrative enforcement cases through the affidavits of internal investigators without making the investigators available for cross-examination. *Id.* In these smaller agencies, the rules of practice and procedure were frequently unpublished, witnesses might or might not be sworn, and hearings were seldom transcribed. *Id.* at 4.

By its enactment of APTRA, the legislature signaled its intent to standardize the rules of practice and procedure for administrative proceedings at all state agencies. Even though APTRA brought some standardization to the hearing process, each agency was responsible for conducting its own administrative hearings. Thus, provisions governing contested case proceedings like those found in subchapter D of today's APA were necessary to provide uniform standards for administrative hearings before all agencies.

to issue subpoenas and take official notice of certain facts. *See id.* § 14(a), (c), (p), (q), 1975 Tex. Gen. Laws at 142-144 (current version codified at Tex. Gov't Code Ann. §§ 2001.085 (written evidence), .087 (cross-examination), .089 (issuing subpoenas), .090 (official notice) (West 2008)). The original enactment of APTRA also contemplated the deposition of agency board members, but only if such depositions were taken before a hearing date was set. *See id.* § 14(d), 1975 Tex. Gen Laws at 142 (since repealed). It was not until two years after the original enactment that the legislature amended APTRA to authorize discovery in contested case proceedings pending before an administrative agency. *See* Act of Mar. 24, 1977, 65th Leg., R.S., ch. 48, § 1, 1977 Tex. Gen. Laws 103, 103 (amending APTRA to add section 14a(a)(1), which authorized discovery) (current version at Tex. Gov't Code Ann. § 2001.091 (West 2008)).

All of these procedural provisions would have been unnecessary in subchapter G because section 2001.176 required the petition for judicial review to be filed in a Travis County district court—a venue that was already subject to the rules of civil procedure, including the rules of discovery. In fact, it is this very requirement that explains many of the other provisions in subchapter G relating to judicial review of agency decisions in contested cases. Because the district courts are vested with inherent authority and jurisdiction under the Texas Constitution, *see* Tex. Const. art. V, § 8, it was necessary for the legislature to specify the scope of judicial review and the appropriate standard of review. *See* Tex. Gov't Code Ann. §§ 2001.172 (scope of judicial review), .173 (trial de novo review), .174 (substantial evidence review) (West 2008). More importantly, it was necessary for the legislature to spell out in express terms that judicial review "is confined to the agency record" with one exception—that a court may receive evidence of procedural

8

irregularities alleged to have occurred before the agency that are not reflected in the record." *Id.* § 2001.175(e).

It is this exception that has resulted in the dispute at issue here. In subsection 2001.175(e), the legislature provided that, absent an allegation of procedural irregularities occurring before the agency, a court is prohibited from going beyond the agency record when reviewing an agency's decision under the substantial evidence rule. *See id.* Courts have traditionally interpreted this language in section 2001.175(e) to deny the availability of discovery in suits for judicial review. *See, e.g.*, *City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844-45 (Tex. App.—Austin 2000, no pet.); *Testoni v. Blue Cross & Blue Shield of Tex., Inc.*, 861 S.W.2d 387, 391 & n.3 (Tex. App.—Austin 1992, no writ) (holding substantial evidence review was limited to agency record under facts of case and finding no abuse of discretion in district court's order granting motion to quash, but noting limited exception not applicable here), *overruled in part on other grounds*, *Montgomery v. Blue Cross & Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 151 (Tex. App.—Austin 1996, writ denied) (en banc). In the same statutory breath, however, the legislature also provided one exception to this general prohibition when it provided that "the court may receive evidence of procedural irregularities alleged to have occurred before the agency that are not reflected in the record." *See* Tex. Gov't Code Ann. § 2001.175(e).

Although this Court has held that a party is not entitled to discovery in the ordinary suit for judicial review under the substantial evidence rule, it has suggested that discovery would be available in the limited instance where a party alleges and wishes to prove that a procedural irregularity not reflected in the agency record occurred in the agency proceedings. *See Purolator*

9

*Armored, Inc. v. Railroad Comm'n*, 662 S.W.2d 700, 702 n.4 (Tex. App.—Austin 1983, no writ). As this Court recognized in *Purolator*, APTRA, and hence the APA, forbids the trial court from exercising a fact-finding power except in the limited circumstances involving allegations of procedural irregularities. Accordingly, this Court reasoned that the rules of civil procedure applicable to issuable facts—i.e., the rules of discovery, evidence and depositions—would not apply in suits for judicial review under the substantial evidence rule in the absence of allegations of procedural irregularities. *Id.*

While this Court has never addressed the Board's argument that the APA precludes all discovery in suits for judicial review under the substantial evidence rule, it has tacitly acknowledged and upheld the trial court's discretion to permit limited discovery in suits for judicial review where a plaintiff has alleged the occurrence of procedural irregularities not reflected in the agency record. Most recently, in *Office of Public Utility Counsel v. Public Utility Commission*, 185 S.W.3d 555 (Tex. App.—Austin 2006, pet. denied), this Court rejected the appellants' claims of procedural irregularity on the ground that appellants failed to produce the extrajudicial facts necessary to support their assertions. *Id.* at 574. Likewise, in *Hammack v. Public Utility Commission*, 131 S.W.3d 713 (Tex. App.—Austin 2004, pet. denied), this Court affirmed the district court's findings of fact and conclusions of law that no procedural irregularities occurred in the face of complaints regarding improper communications between commissioners of the Public Utility Commission and the Electric Reliability Council of Texas among others. The Court pointed out that appellants had the burden of proof to establish the procedural irregularities that they alleged and that considering all of the evidence, including evidence obtained through discovery from the

Commission, the district court's failure to find such irregularities was not against the great weight and preponderance of evidence. *See id.* at 729. The Court further rejected appellants' arguments that the district court had erred in sustaining the Commission's assertions of privilege as to certain documents sought in discovery. *Id.* at 733.

In *City of Stephenville v. Texas Parks & Wildlife Department*, this Court acknowledged the use of discovery in another case involving allegations of procedural irregularity in a suit for judicial review of the Department's order granting a permit application. *See* 940 S.W.2d at 676-77. This Court rejected the applicant's claim that the district court had erred in allowing certain witnesses to testify at the district court hearing because the witnesses were not sufficiently identified in discovery responses. *See id.*

Finally, in *Texas Water Commission v. Dellana*, the supreme court granted mandamus relief ordering the district court to vacate its order granting depositions of commission staff members on the grounds that such discovery was irrelevant to the judicial proceedings because the complainant had not yet exhausted its administrative remedies. *See* 849 S.W.2d at 210. The supreme court explained that the complainant's fear that its complaints would be waived in the absence of discovery in support thereof was unfounded because a motion for rehearing before the agency did not need to set forth infinite detail about the alleged error, but need only be sufficiently definite to apprise the agency of the alleged error and give the agency an opportunity to correct it or prepare to defend it. *See id.* The court further explained that once the complainant had exhausted its administrative remedies, section 19(d)(3) of APTRA would specifically permit the reviewing court to go beyond the agency record and "receive evidence of procedural irregularities alleged to

11

have occurred before the agency but which are not reflected in the agency record," thereby inferring if not actually holding that the complainant would be permitted to conduct the requested discovery once it had satisfied the requirement to exhaust administrative remedies. *Id.*

Thus, contrary to the panel's conclusion, Texas courts have a long history of recognizing that the rules of discovery are applicable in a suit for judicial review under the substantial evidence rule in the limited circumstance where a party makes specific allegations of procedural irregularities that are not reflected in the agency record.

***The trial court has discretion to limit discovery.***

Taking a literal approach in its statutory construction analysis, the panel interprets subsection 2001.175(e) to allow the *receipt* of evidence, but not the *discovery* of evidence. Slip op. *supra* at 4. The panel reasons that the legislature cannot have intended to allow parties to conduct discovery in district court suits for judicial review because governmental agencies would be inundated with time-consuming discovery requests and to allow such discovery would "thwart the APA's limitations on the standard and scope of judicial review" and "vastly expand the APA's otherwise restricted waiver of governmental immunity."[2] Slip op. *supra* at 5. This fear of "opening

---

[2] Since the 1975 enactment of APTRA and the 1993 enactment of the APA, there have only been a handful of cases involving allegations of procedural irregularities not reflected in the administrative record. *See, e.g.*, *Texas Water Comm'n v. Dellana*, 849 S.W.2d 808, 809 (Tex. 1993); *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990); *Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 728 (Tex. App.—Austin 2004, pet. denied); *City of Stephenville v. Texas Parks & Wildlife Dep't*, 940 S.W.2d 667, 676 (Tex. App.—Austin 1996, writ denied); *see also Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 572-74 (Tex. App.—Austin 2006, pet. denied) (rejecting appellees' assertions of procedural irregularity on ground that commissioners were biased and should have recused themselves based on appellees' failure "to produce the extrajudicial facts they claim played a role in the Commission's final decision").

the floodgates" is not founded on any basis that exists in this record or on precedent; the legislature can always close the floodgates if the feared deluge were to come to pass. By allowing a court to receive additional evidence beyond the administrative record, however, it can be reasonably interpreted that the legislature has contemplated and approved of allowing discovery at the district court level in at least limited circumstances in a suit for judicial review under the substantial evidence rule.

To be sure, a finding that the APA permits discovery, even in the limited circumstance involving allegations of procedural irregularities not reflected in the agency record, does not mean that a district court should allow wide-ranging and open-ended discovery. The rules of civil procedure allow a district court in its discretion to limit the availability of discovery. And any agency responding to discovery requests would be able to invoke the standard objections and privileges as specified in the rules of civil procedure and other law. *See, e.g.*, Tex. R. Civ. P. 193.2-4; *Hammack*, 131 S.W.3d at 733 (affirming trial court's denial of discovery request based on commission's assertions of privilege).

For instance, the plaintiffs in this case seek broad discovery into the motivations, reasoning, and thought processes of individual Board members based on the allegation that the Board's decision was arbitrary and capricious. But this Court has held that a party may not probe into the thought processes of an administrative officer. *See City of Frisco v. Texas Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. App.—Austin 1979, writ ref'd n.r.e.) (citing *United States v. Morgan*, 313 U.S. 409, 422 (1940)). As this Court explained, the thought processes or motivations of an administrator are irrelevant in the judicial determination whether the agency order

13

is reasonably supported by substantial evidence. *Id.* And, even in the face of allegations of procedural irregularity, it is not the thought processes or motivations of the administrative officer that would be relevant but rather the procedure employed by the agency in reaching its decision. Administrative agencies "are to be deemed collaborative instrumentalities of justice." *Morgan*, 313 U.S. at 422. Thus, it is not for the courts to probe the mental processes of an agency adjudicator. *See id.* (explaining that district court should not have subjected agency officer to deposition and examination at trial). Similarly, to the extent the plaintiffs seek discovery of privileged documents or communications, a district court may properly exercise its discretion to limit such discovery requests. *See* Tex. R. Civ. P. 192.3, .4, .6.

The Board argues and the panel adopts an all-or-nothing approach. But I believe a more accurate reading of the statutory provisions at issue reveals that the legislature contemplated something in between. To adopt the panel's approach would preclude all discovery based on allegations of procedural irregularities not reflected in the agency record. This approach would significantly and unfairly curtail a plaintiff's ability to carry the burden of proof with respect to such allegations. *See Office of Pub. Util. Counsel*, 185 S.W.3d at 574 (rejecting claim of procedural irregularity based on appellants' "fail[ure] to produce the extrajudicial facts they claim played a role in the Commission's final decision"); *Hammack*, 131 S.W.3d at 729 ("*appellants* bore the burden of proof to establish by evidence the procedural irregularities they allege"). The speculative fear of "opening the floodgates" should not be permitted to thwart justice. Because I believe that the legislature by requiring petitions for judicial review to be filed in a Travis County district court and allowing a party to apply to the court to present additional evidence and for the court to receive

14

evidence of procedural irregularities not reflected in the agency record has demonstrated its intent to permit the use of discovery in the limited circumstances presented in this case, I respectfully dissent from the denial of reconsideration en banc.

_____

Jan P. Patterson, Justice

Before Chief Justice Jones, Justices Patterson, Puryear, Pemberton, Waldrop and Henson

Filed:   January 14, 2010